AO 106 (Rev. 5/85) Affidavit for Search Warrant

# United States District Court

## WESTERN DISTRICT OF ARKANSAS

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

3155 Cherokee Avenue, Camden, Arkansas   71701 also to include all vehicles and all out buildings located on the property more particularly described in Attachment A.

**APPLICATION AND AFFIDAVIT FOR ANTICIPATORY SEARCH WARRANT**

CASE NUMBER: *1:16-CM-10*

I _____ Donna Layman _____ being duly sworn depose and say:

I am a _____ Special Agent with the Department of Homeland Security _____ and have reason to believe
Official Title

that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

3155 Cherokee Avenue, Camden, Arkansas 71701, also to include all vehicles and all out buildings located on the property more particularly described in Attachment A.

in the Western _____ District of Arkansas _____
there **will be concealed upon the occurrence of the anticipated delivery of the package containing counterfeit guitars** a certain property, namely (describe the person or property)

**See Attachment "B"**

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
Evidence of the commission of a criminal offense and property which is
designed or intended for use as the means for committing a criminal offense, and the fruits and instrumentalities of the crime

in violation of Title 18 United States Code, Section(s) 545 and 2320 and 21 U.S.C. 952, 959(a), 841(a)(1) and 813.
The facts to support the issuance of a Search Warrant are as follows:

See attached affidavit submitted by HSI Special Agent Donna Layman, which is made a part hereof.

Continued on the attached sheet and made a part hereof.   ☒ Yes   ☐ No

_____
Signature of Affiant, HSI SA Donna Layman

Sworn to before me, and subscribed in my presence

September 26, 2016 _____   at   Texarkana, Arkansas _____
Date                                                                City and State

Caroline Craven, U.S. Magistrate Judge _____   _____
Name and Title of Judicial Officer                      Signature of Judicial Officer

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE RESIDENCE AND CURTILAGE OF 3155 CHEROKEE AVE, CAMDEN, ARKANSAS, 71701 WHICH IS MORE PARTICULARLY DESCRIBED IN ATTACHMENT A | Case No. _1:16-cm-10_<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR AN ANTICIPATORY SEARCH WARRANT

I, Donna J Layman, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I, Donna J Layman make this affidavit in support of an application for a search warrant authorizing a search of the entire premises located at 3155 Cherokee Ave, Camden, Arkansas 71701 (the "premises"), as further described in Attachment A.   The information to be searched is described in the following paragraphs and in Attachment A.  I seek to search and seize evidence, fruits and instrumentalities of criminal violations of 18 U.S.C § 545 which relates to knowingly and fraudulently importing into the United States any merchandise contrary to law and 18 U.S.C § 2320 which prohibits a person from intentionally and knowingly trafficking or attempting to traffic in goods or services that bear counterfeit marks.  Any such counterfeit merchandise is forfeitable to the United States under 19 U.S.C. § 1595a(c)- Merchandise introduced contrary to law.

2.      The Affiant is employed as a Special Agent with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI).  The Affiant has been employed by DHS-ICE-HSI since 2003. Prior to that, I was a Special Agent with the United States Immigration and Naturalization Service since 1998. Prior to that, I

was a Border Patrol Agent since 1994. I am currently assigned as the HSI Texarkana, Arkansas (HSI/TX) office. Included in my responsibilities are overseeing investigations involving smuggling and Intellectual Property Rights violations. I have participated in and conducted investigations involving the transmission of smuggled and/or trafficking of counterfeit goods and/or proceeds from the sale of smuggled and/or trafficking of counterfeit goods in violation of Title 18, United States Section 545 and Title 18, United States Section 2320.

3.    By virtue of employment as a law enforcement officer, I have performed various duties, which include, but are not limited to:

   a.  Working in the capacity of a surveillance agent detecting and recording movement of persons known to be or suspected of being involved in smuggling and/or trafficking of counterfeit goods.

   b.  Working as a case agent directing the investigation of various smugglers/ traffickers of counterfeit goods and their organization. Directing investigations involving complex conspirators in which numerous smugglers/traffickers, located in various states, and foreign countries were working in concert to illegally import, possess and distribute counterfeit goods within the United States.

4.    Based on the facts set forth in this affidavit, there is probable cause to believe that the items described in Attachment B will be found within the suspected residence, following the condition precedent. I also believe that said property contains evidence of the commission of federal criminal offenses, namely violations of Title 18, United States Section 545 (Smuggling Goods into the United States), and Title 18, United States Section 2320 (Trafficking in Counterfeit Goods or services), Title 21 United States Code, Section 952 (Importation of a controlled substance), Section 959(a) (Manufacture or distribution for purpose of unlawful importation) and

2

Section 963 (Attempt and Conspiracy), Section 841 (distribution of controlled substance), and Section 813 (governing controlled substances analogues) by the occupants of the property more particularly described in Attachment A. There is also probable cause to believe that the items described in Attachment B will constitute evidence of these criminal violations and will lead to the seizure of items in violation of the laws of the United States of America. There is also probable cause to search the premises described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

5.    I make this Affidavit in support of an Anticipatory Search Warrant Application for a residence located at 3155 Cherokee Ave, Camden, Arkansas 71701, located in the Western District of Arkansas, further described in Attachment A.   This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## INFORMATION REGARDING NARCOTICS SMUGGLING GENERALLY

6.    Through training and experience, and through the training and experience of other agents and law enforcement officers, with whom I have talked, I have learned the following:

    a.  that drug traffickers often place assets in names other than their own (nominee names) to avoid detection of the assets by law enforcement agencies;

    b.  that drug traffickers often place assets in corporate entities to avoid detection of the assets by law enforcement agencies;

    c.  that even though these assets are in nominee names, drug traffickers continue to use those assets by exercising dominion and control over them;

    d.  that large-scale drug traffickers maintain and handle large amounts of United States currency in order to finance their ongoing drug business;

3

e.  that traffickers in marijuana, cocaine, methamphetamine, ecstasy and/or other controlled substances maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other documents relating to the transportation and distribution of controlled substances.

f.  that cocaine, methamphetamine, ecstasy and/or other controlled substance traffickers commonly "front" (provide on consignment) cocaine, ecstasy, marijuana and/or other controlled substance to their clients; that the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the cocaine, methamphetamine ecstasy and/or the controlled substance traffickers have ready access to them;

g.  that it is common practice for large scale drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in locations within their residences, vehicles, and/or place of business to conceal them from law enforcement authorities;

h.  that persons involved in large scale drug trafficking conceal in their residences, vehicles and business' caches of drugs, large amounts of currency, financial instruments (including stocks, bonds, certificate of deposits, etc.), precious metals, jewelry, automobile titles, computers, other items of value and/or proceeds of drug transactions, including works of art and evidence of financial transactions relating to the obtaining and secreting of large sums of money acquired from engaging in narcotic trafficking activities;

i.  that when drug traffickers amass large proceeds from the sale of drugs, it is necessary that they "launder" such proceeds; that to accomplish these goals, drug

4

traffickers many times utilize domestic and foreign banks and/or financial institutions with their attendant services, including sales of securities, cashier's checks, money drafts, letters of credit, etc.; that other entities used to "launder" moneys include brokerage houses, real estate firms, shell cooperating and purported legitimate business fronts;

j.  that it is a common practice for large scale drug traffickers to travel to distribution areas to facilitate their trafficking; that after purchasing drugs, the drug trafficker will transport, or cause to be transported, drugs to other areas for distribution; and that the methods of transportation include, but are not limited to commercial airlines, public common carriers, ocean-going vessels, private airplanes, rental and private automobiles, and government and contract mail carriers.

k.  that cocaine, ecstasy, marijuana and/or other controlled substance traffickers commonly maintain addresses or telephone numbers in books, documents, computers etc. which reflect names, addresses and/or telephone numbers of their associates in the trafficker's organization;

l.  that drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their product, and that the photographs are usually maintained in the residence, vehicles, computers, and/or business of the traffickers. Such photographs in my experience are taken and maintained by traffickers in order that they may brag to associates about their caches, drug connections and wealth generated from drug trafficking;

m.  that the Courts have recognized that unexplained wealth is probative evidence of criminal violations by pecuniary gain, in particular trafficking in controlled

5

dangerous substances. (See United States v. Barnes, 604 F.2d 121, 147 (2d Cir. 1979).

n. that based upon my training and experience, I know that drug traffickers commonly have in their possession, (that is on their persons, at their residences, vehicles, and/or their business), firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons; that said firearms are used to protect and secure drug trafficker's property which may include, but is not limited to narcotics, jewelry, narcotics paraphernalia, books, records, United States currency, etc.; that weapons are tools of narcotic trafficker's trade and that it is reasonably foreseeable that conspirators involved in large scale conspiracy will carry, possess and use weapons. (See United States v. Alvarez, 755 F.2d 830, 848, 849 (11th Cir. 1985). This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## CONTROLLED SUBSTANCE ANALOGUE- PROBABLE CAUSE

7. On November 1, 2015, during an investigation into another unrelated email target, U.S. Drug Enforcement Administration (DEA), Task Force Agents (TFA), acting in an undercover capacity entered a narcotics bulletin board site communicating with a third party. The bulletin board site is known as "EC21," which is being operated in China. On this particular website you can enter as a distributor or purchaser of synthetic narcotics. While speaking with another party, Agents noticed an advertisement for synthetic narcotics that boasted of a "lab quality" product. This type of quick advertisement is common on drug forum web pages as one company is competing for business over another company. Agents entered the website via a link

6

on the "EC21" page known as a hyperlink. Agents were directed to a website identified as **chinglabs.com**. This particular website was described as a "Premium Distributor for Research Chemicals." Agents noticed that the website was marketing p-Acetyl fentanyl, a U.S. Scheduled I narcotic, along with numerous other analog chemicals. Agents learned that the company was based in Hebi, China. The company displayed a contact email of **"chinglabs575@gmail.com"** and listed Sara **ZHANG** as the contact person. The company also displayed a "Delivery Guarantee" to the United States and other countries with the exception of Hungary and Rome. Agents contacted Sara **ZHANG** via **chinglabs575@gmail.com** and requested a sample of p-Acetyl fentanyl. Sara **ZHANG** responded to the Agents' request and has been in negotiations of product amount and purchase price. An email search warrant for GMAIL email account **chinglabs575@gmail.com** was applied for by agents of the Gulfport Resident Office (GRO) and granted. During the analysis of GOOGLE email account **chinglabs575@gmail.com**, agents discovered numerous email communications between numerous other GOOGLE email accounts discussing the sale, shipping methods, price list, bargaining, potency of, and availability of controlled substances.

8.    Based upon the facts described below, probable cause is established that **chinglabs575@gmail.com** is linked to Sarah ZHANG, d/b/a, Hebina Higer Chemical Tech, as follows:

- ■ **chinglabs575@gmail.com** was the e-mail account utilized by Sarah ZHANG to communicate with email account alwaysgettingitright@gmail.co on 09/02/2015, in which Sarah ZHANG is listed as the Sales Manager for **www.chinglabs.com** and the company Hebina Higer Chemical Technology Co. Ltd with an address of Qibin District, Xinghe Street, Xinhua Building, Hebi, Henan, 458030, China.

7

- ZHANG has continued to utilize the email account **chinglabs575@gmail.com** in connection with the website **www.chinglabs.com**. Once an individual visits the website **www.chinglabs.com** and places an order or requests information, the request is routed through the website and then forwarded to ZHANG at **chinglabs575@gmail.com** from the address **wordpress@chinglabs.com**.

- From this point the request will be answered by ZHANG through the email count **chinglabs575@gmail.com** and all communication will be conducted through the email account **chinglabs575@gmail.com**.

- ZHANG also uses the email account **chinglabs575@gmail.com** to send out sales on specific chemicals which are all either Schedule I controlled substances or are Analogues of these substances.

- ZHANG continues to utilize the email account **chinglabs575@gmail.com** to solicit, sell and process Scheduled synthetics such as Fentanyl and its Analogues into the United States by using methods to avoid the interception of the packages by United States Customs in the form of false descriptions on the manifest and packaging the substances in Mylar bags to avoid detection.

- ZHANG utilizes Western Union, MoneyGram and Bitcoin for transaction purposes and the postal system EMS in China and USPS within the United States.

- TFA Mitchell has identified 20,245 emails from 08/22/2015 until 04/21/2016 for the email account **chinglabs575@gmail.com** in which ZHANG is engaged in the solicitation, sale or processing of Schedule I synthetic substances or their Analogues.

8

9.     During the ongoing investigation HSI has worked in conjunction with the DEA Gulfport Office and intercepted multiple packages shipped via DHL and USPS from China destined throughout the United States that also contained unlawful Synthetic Narcotics.

10.     During the course of the investigation, agents located an account identified as **jws2@hotmail.com**. A reliable confidential source supplied the agents with information regarding communications to and from this email account. These communications are summarized in the following paragraphs.

11.     On or about 06/06/2016, email account "**jws2@hotmail.com**" emailed **chinglabs575@gmail.com** and stated, "Ok, then the Furanylfentanyl would be what I would need." On the same date, **chinglabs575@gmail.com** emailed ".ok . once is back in stock I will email you." Also on 06/06/16, **jws2@hotmail.com** emailed "OK, just let me know when it gets there and I will transfer you the funds via bit coin from my Circle account."

12.     On July 5, 2016, **jws2@hotmail.com** emailed "Hello Sarah, you were going to let me know when you received more of the Furanyl Fentanyl. Have you received Your Product Yet?" On the same date, **chinglabs575@gmail.com** emailed "yes. how much do you want to order?" Also on July 5, 2016, **jws2@hotmail.com** emailed "Im not at my computer at the moment so I don't remember the quantity, but it was for $200 US dollars. I have that in my circle account ready to turn it into Bitcoin deposit into your account." Also on July 5, 2016, **chinglabs575@gmail.com** emailed ""Mail Order Information, Bitcoin & Western Union Payment Info, Bitcoin Address =

16vZom1DDKZufJdvZ2nwLqNyQbPH98Xw1v, WU details, You can use your credit card on the link below to pay online with your credit card.
https://www.westernunion.com/us/en/send-money/start.html
Western Union Receiver Information

9

First Name : YUN  Last name : SHU  Country : China  Address : 101 Fuyong, Baoan,Shenzhen,Guangdong, 518103, China. Receiver to = Cash file:///G|/...28-07-2016_11-59-10/KU-16-0011^chinglabs575@gmail.com^EmailTIII^2016-07-28%2011.49.01_0005.eml.htm[7/28/2016 1:52:30 PM]
At agent, Date Of Availability Of Funds = Money in Minutes" Also on July 5, 2016, **jws2@hotmail.com** emailed "MTCN=?, EXACT AMOUNT=$200 USD or 0.29529285BTC, NAME=Jeffrey Stevens, ADDRESS=3155 Cherokee, Camden, STATE=Arkansas, COUNTRY=USA ZIP=71701, PHONE=1-870-510-9000, PRODUCT=Furanylfentanyl". Also

13.     Also on July 5, 2016,chinglabs575@gmail.com emailed "REceived. soon we will ship." On July 11, 2016, **jws2@hotmail.com** emailed "Hello Sarah, has the product shipped yet?" On July 12, 2016, **chinglabs575@gmail.com** emailed "you never gave me the MTCN to pick up the funds." On July 13, 2016, **jws2@hotmail.com** emailed "After doing some research I found out the MTCN is a number to pick up the funds from Western Union. I sent the money to your Bitcoin Address from my Circle account and that number I sent you is the Reference ID number for the $200 US dollars that was turned into Bitcoin money. The money was sent 7/5/2016 to your Bitcoin address 16vZom1DDKZufJdvZ2nwLqNyQbPH98Xw1v the reference ID for the transaction is 027acd00-c09a-4222-af47-3f594a187a2d I just wanted to purchase this small amount at first to sample the product. The larger orders will come after I check out the product. Thank you Sarah, Jeff."

14.     Also July 13, 2016, **chinglabs575@gmail.com** emailed "ohh yes you are right. I will prepare soon the order and ship it." On July 13, 2016, **jws2@hotmail.com** emailed "Send me a email when the package ships."

15.     On July 16, 2016, **jws2@hotmail.com** emailed "Sarah has my package shipped yet?" Also on July 16, 2016, **chinglabs575@gmail.com** emailed "hello, no, the product run out of stock and will be back this week. you want refund or u47700 or you want to wait? Regards." Also on July 16, 2016, **jws2@hotmail.com** emailed "No refund is needed, I will wait. Please

10

send me a email when the product arrives. Thank you Sarah, Jeff " Also on July 16, 2016, **chinglabs575@gmail.com** emailed "ok. thank you for understanding."

16. On July 26, 2016, , **jws2@hotmail.com** emailed "Hello Sarah, I received the email saying that FUF is back in stock. Will you send me a massage when the product is on it's way to me? Thank you, Jeff ."

17. On July 27, 2016, **chinglabs575@gmail.com** emailed "yes, I will prepare the order soon , I forgot about this. Sorry."

18. On July 28, 2016, **jws2@hotmail.com** emailed "When is soon?" On July 27, 2016, **chinglabs575@gmail.com** emailed "2 days about. I will fix today the order and ship it." On July 28, 2016, **jws2@hotmail.com** emailed "Let me know when it ships! Thank you, Jeff". Also on July 28, 2016, **chinglabs575@gmail.com** emailed "hello, here is the tracking number dear EA046310587CN Regards."

19. On August 12, 2016, HSI Special Agents Meadows and Layman, along with USPS Inspector Schuetzle, intercepted the U.S. Postal parcel with tracking number EA046310587CN. Due to the parcel's country of origin, a functional equivalent to a border search was conducted on the package as it was believed to possibly contain an analogue of the controlled substance Fentanyl, specifically the "furanyl fentanyl." Inside the package, inside several layers of packing material, was found a small zip lock baggie containing several grams of a white crystalline substance. Due to the lethal nature of Fentanyl and its analogues, the substance was not weighed or field tested, but put immediately into an evidence bag, transported to the Arkansas State Crime Lab and submitted for testing.

20. Experts in the Drug Enforcement Administration's Office of Diversion, Drug, and Chemical Evaluation Section (ODE), have reviewed furanyl fentanyl and advise that they will

11

provide scientific support under Prongs I and II of the analogue act and state that furanyl fentanyl is substantially similar in pharmacological effect to fentanyl, which is a scheduled controlled substance. Should it be determined that the furanyl fentanyl in this case is intended for human consumption, pursuant to 18 U.S.C. § 813, this controlled substance analogue shall be treated, for the purposes of any federal law, as a controlled substance in Schedule I.

## INFORMATION REGARDING SMUGGLING AND COUNTERFEITING CRIMES GENERALLY

21.    Through training and experience, and through the training and experience of other agents and law enforcement officers, with whom I have talked, I have learned the following:

a.    that traffickers of counterfeit goods often place assets in names other than their own (nominee names) to avoid detection of the assets by law enforcement agencies;

b.    that traffickers of counterfeit goods often place assets in corporate entities to avoid detection of the assets by law enforcement agencies;

c.    that even though these assets are in nominee names, traffickers of counterfeit goods continue to use those assets by exercising dominion and control over them;

d.    that large-scale traffickers of counterfeit goods maintain and handle large amounts of United States currency in order to finance their ongoing smuggling/counterfeit business;

e.    that traffickers in counterfeit goods maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other documents relating to the transportation and distribution of the counterfeit goods;

12

f.  that counterfeit goods traffickers commonly "front" (provide on consignment) the counterfeit goods to their clients; that the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the counterfeit goods traffickers have ready access to them;

g.  that it is common practice for large scale traffickers of counterfeit goods to secrete contraband, proceeds of counterfeit goods, sales, and records of counterfeit goods transactions in locations within their residences, vehicles, and/or place of business to conceal them from law enforcement authorities;

h.  that persons involved in large scale counterfeit goods trafficking conceal in their residences, vehicles and business' caches of drugs, large amounts of currency, financial instruments (including stocks, bonds, certificate of deposits, etc.), precious metals, jewelry, automobile titles, computers, other items of value and/or proceeds of counterfeit goods transactions, including works of art and evidence of financial transactions relating to the obtaining and secreting of large sums of money acquired from engaging in counterfeit goods trafficking activities;

i.  that when traffickers of counterfeit goods amass large proceeds from the sale of counterfeit goods , it is necessary that they "launder" such proceeds; that to accomplish these goals, traffickers of counterfeit goods many times utilize domestic and foreign banks and/or financial institutions with their attendant services, including sales of securities, cashier's checks, money drafts, letters of credit, etc.; that other entities used to "launder" moneys include brokerage houses, real estate firms, shell cooperating and purported legitimate business fronts;

13

j.   that it is a common practice for large scale traffickers of counterfeit goods to travel to distribution areas to facilitate their trafficking; that after purchasing counterfeit goods , the counterfeit goods trafficker will transport, or cause to be transported, counterfeit goods to other areas for distribution; and that the methods of transportation include, but are not limited to commercial airlines, public common carriers, ocean-going vessels, private airplanes, rental and private automobiles, and government and contract mail carriers.

k.   that counterfeit goods traffickers commonly maintain addresses or telephone numbers in books, documents, computers etc. which reflect names, addresses and/or telephone numbers of their associates in the trafficker's organization;

l.   that traffickers of counterfeit goods take or cause to be taken photographs of themselves, their associates, their property and their product, and that the photographs are usually maintained in the residence, vehicles, computers, and/or business of the traffickers. Such photographs in my experience are taken and maintained by traffickers in order that they may brag to associates about their caches, counterfeit goods connections and wealth generated from counterfeit goods trafficking;

m.   that the Courts have recognized that unexplained wealth is probative evidence of criminal violations by pecuniary gain;

n.   that based upon my training and experience, I know that traffickers of counterfeit goods commonly have in their possession, (that is on their persons, at their residences, vehicles, and/or their business), firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons;

14

that said firearms are used to protect and secure the trafficker's property which may include, but is not limited to narcotics, jewelry, narcotics paraphernalia, books, records, United States currency, etc.; that weapons are tools of trafficker's trade and that it is reasonably foreseeable that conspirators involved in large scale conspiracy will carry, possess and use weapons. (See United States v. Alvarez, 755 F.2d 830, 848, 849 (11th Cir. 1985)).

o. Based upon my training and experience, it would be highly likely that because these particular counterfeit items originated in China, they were likely ordered using computing devices accessible to the internet. Comparing the relative difficulty of ordering items of the phone, with a likely language barrier, negotiating international payment, and then arranging for delivery, in my training and experience, I believe that the circumstances would indicated that the items acquired in this case were likely ordered and paid for over using a computing device accessible to the internet. Furthermore, I believe that evidence of the knowing attempt to acquire these counterfeit items from a manufacturer of counterfeit goods in China would be found on electronic devices.

## COUNTERFEITING- PROBABLE CAUSE

22.    On August 10, 2016, I also received information from the National Targeting Center (NTC) that they were tracking multiple questionable mail parcels shipped from China. One of the parcels has been identified as inbound to Jeffrey Stevens at 3155 Cherokee, Camden, Arkansas 71701. The NTC reported that they reached out to the United States Postal Inspection Service (USPIS), and they had retrieved the parcel. The USPIS had the parcel in their

15

possession. The NTC requested that HSI-Texarkana link up with USPIS for an extended border search of the parcel to inspect the contents and seize the contents, if warranted.

23.    On August 30, 2016, the functional equivalent of a border search was conducted on two mail parcels shipped from China. One mail parcel displayed a USPS shipping label with tracking number CX004244618CN. The content listed on the shipping label was that it contained one item which was described as a gift worth $80.00. The package actually contained two items that were marked as Gibson guitars. The other mail parcel displayed tracking number CX004243970CN. The content listed on the shipping label was that it contained one item which was described as an electric guitar worth $80.00. The package actually contained another item marked as a Gibson guitar. Due to the incongruousness of the description on the shipping label and the contents of the package, a request was made to Gibson concerning the authenticity of the guitars.

24.    Also on August 30, 2016, a representative of Gibson Guitars confirmed all three of the guitars were counterfeit.

25.    On September 9, 2016, I received information from the USPIS that two additional mail parcels shipped from China were received at the Camden Post Office that were identified as inbound to Jeffrey Stevens at 3155 Cherokee, Camden, Arkansas 71701.

26.    On September 12, 2016, a functional equivalent of the border search was conducted on these two mail parcels shipped from China. One mail parcel displayed tracking number CX004439778CN. The content listed on the shipping label was that it contained one item which was described as a gift worth $80.00. The package, once inspected, contained an item marked as a Fender guitar. The other mail parcel displayed tracking number CX004451734CN. The content listed on the shipping label was that it contained one item which

16

was described as a gift worth $60.00. This package contained an items marked as a Taylor guitar. Due to the incongruousness of the description on the shipping label and the contents of the package, requests were made to Fender and Taylor concerning the authenticity of the guitars.

27. Also on September 12, 2016, a representative of Fender guitar confirmed the guitar labeled "Fender" is counterfeit. Also, a representative of Taylor Guitars confirmed the guitar labeled "Taylor" is counterfeit.

28. On September 15, 2016, I received information from the USPIS that an additional mail parcel shipped from China and received at the Camden Post Office that is identified as inbound to Jeffrey Stevens at 3155 Cherokee, Camden, Arkansas 71701.

29. On September 20, 2016, a functional equivalent of the border search was conducted on this mail parcel from China displaying tracking number CX004297793CN. The content listed on the shipping label was that it contained one item which was described as a gift worth $80.00 and contained an item marked as a Gibson guitar. Due to the incongruousness of the description on the shipping label and the contents of the package, a request was made to Gibson concerning the authenticity of the guitar.

30. On September 21, 2016, a representative of Gibson Guitars confirmed the guitar is counterfeit.

31. A plan was formulated by members of the United States Postal Inspection Service and Special Agents from the Department of Homeland Security in which a Postal Inspector will attempt to deliver the intercepted parcel displaying tracking number CX004297793CN containing a counterfeit Gibson guitar addressed to: Jeffrey Stevens at 3155 Cherokee, Camden, Arkansas 71701. For the controlled delivery of this parcel, agents will include the counterfeit Gibson guitar. After the parcel is delivered to any person at the residence located at 3155 Cherokee Ave, Camden,

17

Arkansas 71701, Special Agents with the local 13th Judicial District East Drug Task Force and HSI Agents will execute the search warrant for the described residence.

32.     If the listed parcel is not taken into the residence described in Attachment A, this search warrant will be returned unexecuted.

## CONDITION PRECEDENT

33.     Within the next week, an undercover Postal Inspector will pose as a parcel delivery driver and will attempt to have a resident at 3155 Cherokee Ave, Camden, Arkansas 71701, take custody of it.  Once the package has been accepted and taken into the residence, the undercover agent will depart the residence, and agents will then execute the search warrant, if granted.

## CONCLUSION

34.     Based on the above mentioned information, I believe probable cause exists that there will be located within the premises described as 3155 Cherokee Ave, Camden, AR, 71701, evidence of a crime, contraband, the fruits of the above criminal offense, items otherwise criminally possessed, and property designed or intended for use or which is or has been used as the means of committing federal criminal offenses, namely Title 18, United States Section 545 (Smuggling Goods into the United States), and Title 18, United States Section 2320 (Trafficking in Counterfeit Goods or services), Title 21 United States Code, Section 952 (Importation of a controlled substance), Section 959(a) (Manufacture or distribution for purpose of unlawful importation) and Section 963 (Attempt and Conspiracy), Section 841 (distribution of controlled substance), and Section 813 (governing controlled substances analogues).  Specifically, I believe, based on my training and experience, that there will be instrumentalities of this crime,

18

specifically listed in Attachment B.  Therefore, after the package is delivered, I seek permission to enter the premises and any area inside such premises which could contain these items, in order to search for and recover instrumentalities of the aforementioned crimes.

Respectfully submitted,

Donna J Layman
Special Agent
DHS-ICE-HSI

Subscribed and sworn to before me on 26th day of September, 2016.

UNITED STATES MAGISTRATE JUDGE

19

## ATTACHMENT A

### Description of Property to Be Searched

The residence located at 3155 Cherokee Ave, Camden, AR (Suspect residence/business) is a Single family, single story structure with the main entrance facing Cherokee Ave. The Suspect residence/business is brick, primarily brown in color with green trim. There is a driveway with covered parking on the south side of the building and an additional entrance to the building.

All outbuildings or other structures located on the premises of 3155 Cherokee Ave, Camden, AR at the time of the execution of the warrant.

All vehicles located at 3155 Cherokee Ave, Camden, AR at the time of the execution of the search warrant.





## ATTACHMENT B
## LIST OF ITEMS TO BE SEARCHED FOR AND SEIZED

All evidence and records related to violations of Title 18, United States Section 545 (Smuggling Goods into the United States), and Title 18, United States Section 2320 (Trafficking in Counterfeit Goods or services), Title 21 United States Code, Section 952 (Importation of a controlled substance), Section 959(a) (Manufacture or distribution for purpose of unlawful importation) and Section 963 (Attempt and Conspiracy), Section 841 (distribution of controlled substance), and Section 813 (governing controlled substances analogues)including, but not limited to:

1. Records, documents, books, receipts, notes, financial ledgers, memoranda, buyer and seller lists, and correspondence used to facilitate the importation and resale of counterfeit merchandise, controlled substances, or their analogues, including but not limited to documentary records, ledgers, invoices, shipping documents, financial documents representing the payments to manufacturers of counterfeit merchandise, controlled substances, or their analogues and the receipt of funds from the sale of the same.

2. Books, records, receipts, bank statements and records, money drafts, letters of credit, bank checks, and other items evidencing the obtaining, secreting, transfer and concealment of assets, and the obtaining, secreting, transfer, concealment and expenditure of money. Also, any safes, boxes, containers, and/or cabinets whether locked or unlocked located on the premises and indicia of ownership of safe deposit boxes.

3. Income tax returns, W-2 and W-4 forms, receipts, and other documents pertaining to the filing of personal and business tax returns.

4. Drug paraphernalia, including but not limited to weight scales, packaging material, and devices used to aid in the human consumption of controlled substances

5. Cellular Telephones, Personal Telephone books, Telephone records, U.S. currency, credit cards, confirmation receipts for money transfers and earning statements.

6. Photographs, and/or video tape reproductions of co-conspirators, assets, or controlled substances, or their analogues.

7. Weapons, firearms, and counter-surveillance equipment that might be utilized in the conduct of illegal drug transactions.

8. Currency and monetary instruments believed to be derived from the sale of counterfeit merchandise and other illegal activity.

9.. Names, addresses and/or telephone numbers in books and documents;

1

10.    Records showing indicia of ownership of vehicles or other means of transportation;

11.    Records evidencing occupancy or ownership of the premises described above including, but not limited to, utility bills, lease agreements, mortgage loan, loan documents, service, and repair contract, mail envelopes, or addressed correspondence;

12.    Records or other items which evidence ownership or use of computer equipment found in the above residence, including, but not limited to, sales receipts, bills for internet access, passwords, and handwritten notes.

13.    Agents directed to search computers, backup media and other digital media storage devices on the premises. If Agents cannot, for technical reasons or because of the volume of information, search on site, then Agents are authorized to make an image of hard drives or seize the computers, printers, backup digital media, hard disk drives or other devices capable of storing digital media and remove them to a laboratory setting to retrieve the listed information.

14.    Agents are authorized to seize any and all software, manuals, passwords, or any other instructions necessary to read, understand, or interpret the above-described information.

15.    For any computer, computer hard drive, or other physical object upon which computer data can be recorded (hereinafter, "COMPUTER") that is called for by this warrant, or that might contain things otherwise called for by this warrant:

  a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

  b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

  c. evidence of the lack of such malicious software;

  d. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

  e. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

  f. evidence of the times the COMPUTER was used;

2

g. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

h. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

i. contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

3